**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BUREAU OF CONSUMER FINANCIAL PROTECTION,

Plaintiff,

v.

DRIVER LOAN, LLC, and ANGELO JOSE SARJEANT,

Defendants.

## COMPLAINT

The Bureau of Consumer Financial Protection brings this action against Driver Loan, LLC, and Angelo Jose Sarjeant and alleges as follows.

## INTRODUCTION

1. Driver Loan is not a bank, but it has adopted a business model as old as banking itself: it accepts money from some consumers to lend to other consumers.

2. In the course of its business, Driver Loan and its CEO, Sarjeant, have made misrepresentations to both sets of consumers. They have marketed Driver Loan's "deposit" product through misleading materials touting the safety of consumers' funds. And they have represented to

potential borrowers that their loans would cost far less than their actual cost.

3. The Bureau brings this action under § 1054 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5564, to stop this unlawful conduct, to obtain relief for harmed consumers, and to impose civil penalties on Driver Loan and Sarjeant.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction because this action is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

5. This Court has personal jurisdiction over Defendants because the causes of action arise from Defendants' conduct in this district. 12 U.S.C. § 5564(f).

6. Venue is proper in this district because Defendants are located, reside, and do business in this district. 12 U.S.C. § 5564(f).

## PARTIES

7. The Bureau is an agency of the United States charged with regulating the offering and provision of consumer-financial products and services under "Federal consumer financial laws," 12 U.S.C. § 5491(a), including the CFPA, 12 U.S.C. § 5481(14). The Bureau has independent litigating authority, including the authority to enforce the CFPA. 12 U.S.C. § 5564(a), (b).

8. Driver Loan is a limited-liability company based in Doral, Florida.

9. As a limited-liability company, Driver Loan is a "person" under the CFPA. 12 U.S.C. § 5481(19).

10. At all times relevant to this Complaint, Driver Loan has been a "covered person" under the CFPA, 12 U.S.C. § 5481(6)(A), because it has "engage[d] in offering or providing a consumer financial product or service."

11. The CFPA defines "consumer financial product or service" to include "extending credit and servicing loans," 12 U.S.C. § 5481(5), (15)(A)(i), and "engaging in deposit-taking activities . . . or otherwise acting as a custodian of funds . . . for use by or on behalf of a consumer" primarily for personal, family, or household purposes, 12 U.S.C. § 5481(5), (15)(A)(iv).

12. Driver Loan extends credit and services loans primarily for personal, family, or household purposes. 12 U.S.C. § 5481(5), (15)(A)(i).

13. Driver Loan offers to accept deposits from consumers and to act as a custodian of those funds for use by consumers for personal, family, or household purposes. 12 U.S.C. § 5481(5), (15)(A)(iv).

14. Sarjeant is a "related person" under the CFPA, 12 U.S.C. § 5481(25)(C)(i), because he is Driver Loan's CEO and is charged with managerial responsibility for Driver Loan. Sarjeant runs the business's day-to-day operations and approves content for Driver Loan's website and marketing materials, including the deceptive statements that are the subject of this Complaint.

15. As a related person, Sarjeant is liable because he is deemed to be a "covered person" under the CFPA, 12 U.S.C. § 5481(25)(B), and because he engaged in the deceptive acts or practices described below, in violation of § 1036(a)(1)(B) of the CFPA, 12 U.S.C. § 5536(a)(1)(B).

**FACTS**

16. Driver Loan began offering short-term, high-interest loans in 2017.

17. Driver Loan's borrowers typically are drivers who work with companies like Uber and Lyft, but the loans they take come with no strings attached and may be used for any purpose.

18. Borrowed funds are deposited mostly in consumers' personal bank accounts.

19. Driver Loan and Sarjeant understand that many borrowers use their loans to pay cellphone bills, and they acknowledge that borrowers may use the money for other personal, family, or household purposes, including personal gifts around the holidays.

20. Driver Loan represents to consumers that the APR associated with their loans is 440%; in fact, the APRs range from about 975% to 978%.

21. Borrowers receive a lump sum, usually from $100 to $500, that is repayable in 15 daily installments of equal amounts. The loan comes with a 5% processing fee, which must also be repaid in daily installments. The daily payments are made by debit card. If borrowers miss a payment, such as when there is not enough money on the debit card used for repayment, Driver Loan assesses a late fee.

22. Driver Loan claims to have processed over 100,000 loan applications and to have lent over $30 million to consumers.

23. In June of 2020, Driver Loan started taking "deposits" from consumers as a way of raising additional funds to make more loans.

24. The company began marketing its deposit product through a new program called "DriverLoan Investors Club," with its own website, social media, and blog posts. The program offers consumers an opportunity to "deposit as little as $50" and to receive a "fixed" or "guaranteed" 15% APY.

25. Driver Loan refers to consumers' deposits as "certificates" that accumulate "savings interest," and it compares its rate of return to rates associated with banks' savings accounts. The company also guarantees that consumers' deposits are "FDIC insured up to $500,000" at "member financial institutions" and "participating banks."

26. Driver Loan refers to its product as a "deposit," noting that consumers have the option to make "manual," "daily," and "[a]utomatic deposits." And it notes that its product "is not subject to SEC regulations" and "is not a security."

27. On its website, Driver Loan continually claims that new consumers are making deposits, with a pop-up appearing about every minute stating, "new investor has registered from [state]."

28. The returns on consumers' deposits are anything but "guaranteed." Deposited funds are not held at FDIC-insured institutions; instead, according to Driver Loan, most funds are quickly lent out to borrowers.

29. Additionally, the claims on Driver Loan's website that consumers from across the country are depositing funds every minute are false. Instead, the average rate of new customers is just a few each day.

30. The greatest risk to consumers' deposits comes from the other half of Driver Loan's business: its extensions of credits. The company uses deposited funds to make usurious loans. While Driver Loan represents to borrowers that the loans carry APRs of 440%, in fact, the APRs range from about 975% to 978%.

31. Driver Loan's APRs violate Florida's usury statute, potentially relieving borrowers of the obligation repay their loans.

32. Section 687.071(3) of the Florida Statutes provides that any person who knowingly extends credit and charges or receives interest exceeding 45% APR commits a third-degree felony.

33. Section 687.071(7) of the Florida Statutes provides that an extension of credit made in violation of § 687.01(3) is not an enforceable debt in Florida courts.

34. Indeed, the civil penalty for violation of § 687.071 is forfeiture of not only the unlawful interest, but also the entire principal amount.

35. Simply put, Driver Loan may be unable to collect borrowers' delinquent loan payments, which could cause it to be unable to meet its obligations to depositors should they decide to withdraw their funds.

## VIOLATIONS OF LAW

36. Under the CFPA, it is unlawful for a covered person to engage in a deceptive act or practice in connection with any transaction with a consumer for a consumer-financial product or service or the offering of a consumer-financial product or service. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

37. An act or practice is deceptive if there is a material representation or omission of information that is likely to mislead consumers acting reasonably under the circumstances.

## COUNT 1

### Deceptive Representations about the Risks Associated with Driver Loan's Deposit Product

38. The Bureau re-alleges and incorporates by reference paragraphs 1-37.

39. Defendants represented that consumers' deposits would be "FDIC insured up to $500,000" at "member financial institutions" and "participating banks" and would have a "fixed" and "guaranteed" APY of 15%.

40. Further, Driver Loan compared its product to banks' savings products.

41. Finally, on its website, Driver Loan represented to consumers that a new consumer was depositing funds with the company about every minute.

42. A consumer acting reasonably under the circumstances would believe that Driver Loan was offering a safe product that had been trusted by thousands of fellow consumers. But none of this was true.

43. In fact, most deposited funds were not held in FDIC-insured accounts, the rate of return was not "guaranteed," and consumers were not depositing funds with Driver Loan every minute. Instead, consumers' funds were lent to borrowers at usurious rates that rendered the loans uncollectable, creating the substantial risk that Driver Loan would not be able to collect delinquent loans or meet its obligations to consumers who sought to withdraw their deposited funds.

44. Defendants' misrepresentations were likely to mislead consumers acting reasonably under the circumstances.

45. Defendants' misrepresentations were material because a consumer would likely decide whether to deposit funds with Driver Loan based on an understanding that the money would be kept in FDIC-insured accounts with guaranteed rates of return and comforted with the knowledge that other consumers were making the same decision.

46. Therefore, Defendants engaged in deceptive acts or practices that violated the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

**COUNT 2**
**Deceptive Representations about**
**the APRs Associated with Driver Loan's Extensions of Credit**

47. The Bureau re-alleges and incorporates by reference paragraphs 1-37.

48. Defendants represented to prospective borrowers that Driver Loan's extensions of credit carry APRs of 440%.

49. In fact, the APRs on the company's loans range from about 975% to about 978%.

50. Defendants' misrepresentations were likely to mislead consumers acting reasonably under the circumstances.

51. Defendants' misrepresentations were material because the cost of the credit would likely influence borrowers' decisions to take loans from Driver Loan versus its competitors.

52. Therefore, Defendants engaged in deceptive acts or practices that violated the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## DEMAND FOR RELIEF

The Bureau requests that the Court, as permitted by 12 U.S.C. § 5565:

a. enjoin Defendants from committing future CFPA violations;

b. award damages or other monetary relief;

c. order Defendants to pay redress to consumers;

d. order disgorgement of Defendants' ill-gotten gains;

e. impose civil money penalties on Defendants;

f. order Defendants to pay the costs incurred in connection with prosecuting this action; and

g. award additional relief as may be just and proper.

Respectfully submitted,

THOMAS G. WARD
Enforcement Director
JEFFREY PAUL EHRLICH
Deputy Enforcement Director
KARA K. MILLER
Assistant Litigation Deputy
s/ Benjamin Konop
BENJAMIN KONOP (OH Bar No. 0073458)
Senior Litigation Counsel
e-mail: Benjamin.Konop@cfpb.gov
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, D.C. 20552
Telephone: 202-435-7265