UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-24550-CIV-SANCHEZ
(CONSENT CASE)

BUREAU OF CONSUMER FINANCIAL PROTECTION,

Plaintiff,

v.

DRIVER LOAN, LLC, and ANGELO JOSE SARJEANT,

Defendants,

And

SELECT BANKCARD, INC.,

Garnishee.

**MOTION FOR ORDER OF DISPOSITION AND PROTECTIVE OBJECTION TO GARNISHEE'S ANSWER**

Plaintiff, the Bureau of Consumer Financial Protection (Bureau), files this Motion for Order of Disposition and, if deemed necessary, its Objection to Garnishee's Answer. The Bureau requests that the entirety of the funds in the garnishee's possession, $201,359.01, be paid to the Bureau.

The Bureau attempted to confer with Select Bankcard (Select) and counsel for Defendants. Bureau attempted to contact Select by email and phone on November 21, 2023. Select did not respond before the Bureau filed this motion and protective objection on the morning of November 22, 2023. Counsel for Defendants indicated that they do not represent the third party referenced below, Chiki Solutions Corp. (Chiki Solutions), and that Defendants do not agree to the relief sought.

# MEMORANDUM OF LAW

## BACKGROUND

Based on the Bureau's allegations that Defendants engaged in deceptive acts and practices in violation of § 1036(a)(1)(B) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5536(a)(1)(B), and the stipulations of both Defendants—Driver Loan, LLC (Driver Loan) and Angelo Jose Sarjeant—the Court entered a June 1, 2021 stipulated order (1) prohibiting Defendants from engaging in certain business activities (including accepting consumer deposits), Stipulated Final J. and Order ¶¶ 7-8, ECF No. 13, (2) requiring Defendants to calculate and then pay millions in redress to affected consumers, *id.* at ¶¶ 11-13, and (3) ordering Defendants to pay a civil money penalty to the Bureau of $100,000, *id.* at ¶ 30.

The Bureau initiated contempt proceedings on December 22, 2021, alleging that Defendants continued to accept consumer deposits after entry of the stipulated order and that Defendants failed to redress affected consumers. Appl. Order Show Cause 3-5, ECF No. 19. The contempt issues are fully briefed. Even under Defendants' view, they concede that about $2.8 million in redress is still owed. Sur-Reply Memo 2, ECF No. 53

On October 24, 2023, the Bureau obtained a writ of garnishment on Select BankCard, a merchant processor affiliated with Defendants. Writ of Garnishment, ECF No. 58. Select Bankcard provided an emailed declaration in response to the writ, attached as Exhibit A, attesting that it holds $201,359.01 in funds in reserve in an account in the name of "Chiki Solutions Corp" doing business as "Driverloan USA," an entity that Select indicates is owned by a relative of Mr. Sarjeant's, Maria Claudia Sarjeant. Shipley Decl. ¶¶ 2-3. Select BankCard attests in its declaration that, in the last seven weeks, both Mr. Sarjeant and one of his attorneys contacted the company. Shipley Decl. ¶ 2. According to the declaration, Mr. Sarjeant requested payment of all of the funds held in reserve, and his attorney (one of the attorneys representing Mr. Sarjeant in this case) threatened legal action

if the funds were not paid. *Id.*

Mr. Sarjeant testified during a post-judgment deposition that Driver Loan is the same as Chiki Solutions, that Chiki Solutions has no other entities under its corporate umbrella, and that he was the CEO for both entities. Sarjeant Dep. 47:11-48:6.[1] As Mr. Sarjeant explained during his deposition, "Chiki Solutions is Driver Loan." Sarjeant Dep. 48:3-6. Mr. Sarjeant's post-judgment deposition testimony is similar to testimony that he gave during the investigation that preceded this lawsuit, when he acknowledged that Driver Loan did its banking business through an account in the name of "Chiki Solutions with the d/b/a as DriverLoan USA." Sarjeant IH 39:16-19. [2]

On at least two different occasions, Mr. Sarjeant has also acknowledged that the money held by Select should be used toward satisfaction of his and Driver Loan's judgment debts. First, in an email that he sent to the Bureau on November 24, 2021, he attached a letter from Select and told the Bureau that, "if the CFPB is able to do anything to release [the] funds [held by Select BankCard], we would immediately pay the fine and investors with that money."[3] Mr. Sarjeant also represented in a submission to this Court that he "ha[s] a large amount of fund[s] withheld by the merchant processor, funds that belong to investors and I am waiting for the merchant to release the funds so they can be returned to investors." Statement of Facts, ECF No. 24-1.

## ANALYSIS

Because Chiki Solutions Corp. is, at best, Driver Loan's nominee (if not an entirely fraudulent creation), the Bureau is entitled to the entirety of the proceeds in Select's possession--$201,359.01—for the purpose of redressing consumers, to be applied in partial satisfaction of that

---

[1] Attached as Exhibit B is an excerpt of Mr. Sarjeant's May 6, 2022 deposition.
[2] Attached as Exhibit C is an excerpt of Mr. Sarjeant's August 14, 2020 investigative hearing testimony.
[3] Attached as Exhibit D is an email from Mr. Sarjeant to Bureau counsel dated November 24, 2021, which forwarded a letter from Select BankCard dated April 2, 2021.

part of the judgment requiring redress. *See* Stipulated Final J. and Order ¶¶ 11-13. And, in all events, the Bureau is also entitled to $100,000 of the proceeds to satisfy the unpaid $100,000 money judgment in favor of the Bureau and the other $101,359.01 as a sanction for Defendants' contempt.

**I. The Bureau is entitled to the entirety of the $201,359.01 to redress the consumers that Defendants harmed and have not repaid.**

Under the Federal Debt Collection Procedures Act (FDCPA), Congress authorizes courts to issue writs of garnishment in order to satisfy a judgment, order, or decree entered in favor of an agency of the United States. *See* 28 U.S.C. §§ 3205(a), 3002(8) and (15). A writ of garnishment reaches all nonexempt property in which a debtor has a substantial nonexempt interest, which is in the possession, custody, or control of the garnishee. *See* 28 U.S.C. § 3205(a). Upon resolution of any objections, courts are to enter orders directing garnishees "as to the disposition of the judgment debtor's nonexempt interest" in the property garnished. *See* 28 U.S.C. § 3205(c)(7). Congress also vests courts with authority in judgment-enforcement proceedings to issue any order "denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure" to collect judgment debts involving the United States. 28 U.S.C. § 3013.

Under these statutory grants of authority and this Court's "inherent authority to enforce its own orders," *FTC v. Nat'l Urological Grp., Inc.*, 80 F.4th 1236, 1242 (11th Cir. 2023), the Bureau requests that the Court order that the entire $201,359.01 be paid to the Bureau for the Bureau to redress consumers harmed by Defendants' unlawful conduct.

Defendants concede that at least $2.8 million in court-ordered redress remains owed, Defs. Sur-Reply Memo 2, and there is no reason to think that, at this juncture, Defendants would provide any redress to consumers if the money held by Select was provided to Defendants. Instead, the Bureau requests that it be awarded the $201,359.01 for the Bureau, consistent with the Stipulated

Final Judgment and Order and the Bureau's Congressional authorization to compensate harmed consumers, *see* 12 U.S.C. § 5497(d), to issue redress to Defendants' victims. The Bureau will, within 6 months of the Court's order, file under seal a status report notifying the Court and Defendants of the status of the Bureau's redress efforts in connection with the $201,359.01.

To the extent that Defendants claim that such an order is inappropriate because the money held by Select is in the name of Chiki Solutions rather than Driver Loan, that argument is without merit. Under a nominee theory, assets held by one entity are available to satisfy the judgment of another where the holding entity only possesses assets "for the benefit of another" and in a "representative or nominal capacity only." *May v. United States*, No. 07-10531, 2007 WL 3287513, at *1 (11th Cir. Nov. 8, 2007) (cleaned up). That is the case here, where Mr. Sarjeant was an executive at both companies, Sarjeant Dep. 47:11-48:6, Chiki Solutions had no other business purpose but to hold Driver Loan's assets, Sarjeant Dep. 47:11-48:6, Driver Loan kept its money in accounts in Chiki Solution's name, Sarjeant IH 39:16-19, and Mr. Sarjeant represented both to the Court and the Bureau that the money being withheld by Select came from Driver Loan customers and should be returned to them, Ex. C; Statement of Facts, ECF No. 24-1.[4]

---

[4] While the same result is warranted under an alter ego theory, which rests primarily on the idea that corporate forms should not be utilized fraudulently to harm creditors, *see, e.g.*, *Molinos Valle Del Cibao v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011), the Bureau recognizes that additional proof is required where, as in this case, a judgment debtor's family member owns the corporate entity and not the judgment debtor himself. *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 6:16-CV-366-PGB-LHP, 2023 WL 2523447, at *2 (M.D. Fla. Mar. 14, 2023) (denying motion to dismiss alter ego allegations where individual installed close family members as owners of entity while maintaining control of entity). Accordingly, if the Court does not grant the Bureau's motion on the ground that Chiki Solutions Corp. is Driver Loan's nominee, the Bureau requests the Court stay any ruling on the motion for disposition and allow a brief discovery period of 60 days so that the Bureau can obtain evidence to further support its claims under an alter ego theory.

**II. Even if the Court does not order that the $201,359.01 be used for Bureau-administered redress, the Bureau is still entitled to the entire $201,359.01.**

The Bureau is also entitled to payment of the $201,359.01 because the $100,000 money judgment remains unpaid and because, as established in the Bureau's contempt filings, the Bureau is entitled to an additional money judgment of $728,498 as a result of Defendants' contemptuous conduct. Reply Mem. 10, ECF No. 50. Accordingly, even if the Court finds that the $201,359.01 is not available for the Bureau to use to administer redress, the Bureau requests that the Court order that the $201,359.01 be paid to the Bureau in partial satisfaction of Defendants' money penalties.

**PROTECTIVE OBJECTION**

Under 28 U.S.C. § 3205(c)(5), the Bureau and Defendants have 20 days from receipt of the garnishee's answer to file a written objection. For the reasons identified above, the Bureau objects to the garnishee's answer to the extent that the garnishee asserts that any of the money withheld should not be immediately payable to the Bureau. The garnishee's answer also indicates that it may have incurred legal fees and costs related to its answer or to the retained funds. Shipley Decl. ¶ 3. It is unclear whether Select is claiming that, if the Court orders the funds paid to the Bureau, Select claims entitlement to any portion of the funds. To the extent that Select makes such a claim, the Bureau objects and notes that there is no requisite waiver of sovereign immunity for a garnishee to withhold attorney fees and costs from amounts otherwise payable to the United States or one of its agencies. *See Joe v. United States*, 772 F.2d 1535, 1536 (11th Cir. 1985).

## CONCLUSION

For the foregoing reasons, the Bureau requests that the Court order that all $201,359.01 of the funds held by Select be paid to the Bureau.

Respectfully submitted,

ERIC HALPERIN
Enforcement Director
ALUSHEYI J. WHEELER
Deputy Enforcement Director
KARA K. MILLER
Assistant Litigation Deputy

s/ Benjamin Konop
BENJAMIN KONOP, Special Bar ID #A5502012
(OH Bar No. 0073458)
benjamin.konop@cfpb.gov
JACOB A. SCHUNK, Special Bar ID #A5502876
(Iowa Bar Number AT0011308)
jacob.schunk@cfpb.gov
Enforcement Attorneys
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: 202-718-0394

*Counsel for Bureau of Consumer Financial Protection*

## Certificate of Service

I certify that, on November 21, 2023, the foregoing Motion for Order of Disposition and Protective Objection to Garnishee's Answer was served on Select Bankcard, Inc., through email and certified mail to the registered agent for Select Bankcard, Inc.:

Jonathan Spencer Shipley
3451 N. Triumph Blvd., Suite 300
Lehi, UT 84043

I certify that, on November 22, 2023, the foregoing Motion for Order of Disposition and Protective Objection and this Certificate of Service—as well as the Motion for Writ or Garnishment, ECF No. 57; Proposed Writ, ECF No. 57-1; and Signed Writ of Garnishment, ECF No. 58—were served on Chiki Solutions Corp., by service on the Secretary of State, by certified mail and return receipt requested, and by mailing the documents, certified mail and return receipt requested, to the last known address of Chiki Solutions Corp. and its registered agent, president, and vice president, as follows:

Chiki Solutions Corp.
8350 NW 52 Ter, Apt. 301
Doral, FL 33166

Evelin Davila
Registered Agent and President
Chiki Solutions Corp.
8350 NW 52 Ter, Apt. 301
Doral, FL 33166

Maria Claudia Sarjeant
Vice President
8350 NW 52 Ter, Apt. 301
Doral, FL 33166

Secretary of State
R.A. Gray Building
Tallahassee, FL 32301

Chiki Solutions Corp.
c/o Secretary of State
Box 6327
Tallahassee, FL 32314

I further attest that, at about the time of filing the Motion for Writ of Garnishment and Proposed Writ, the Bureau attempted to serve Chiki Solutions Corp. at the address identified above for Ms. Davila and Ms. Sarjeant. The process server reported that, according to a front desk employee, Chiki Solutions closed the account a year ago and was no longer located at that

address. The Bureau then attempted personal service at other addresses thought to be associated with either Chiki Solutions Corp., Maria Sarjeant, or Evelin Davila:

(A) 16474 SW 59th Ter.
Miami, FL 33193

(B) 10891 NW 17th St., Suite 143
Miami, FL 33172-2051

(C) 9870 NW 75th Ter.
Miami, FL 33178

(D) 9770 NW 74th Ter.
Doral, FL 33178

(E) 5350 NW 84th Ave., Apt. 801
Doral, FL 33166

The process server reported that service could not be accomplished. According to the process server:

a person at location A indicated that Ms. Davila now lived outside of the United States and did not know any address for Ms. Sarjeant,

a different company was located at the premises identified as location B,

location C was visibly vacant,

a person at location D indicated that Ms. Sarjeant moved out of that property and Ms. Davila never lived there, and

a person at location E indicated that Ms. Sarjeant and Davila were unknown to the person who had begun living in the residence in August 2023.

I further attest that, on November 1, 2023, and again on November 6, 2023, Bureau counsel sent an email to counsel in this action asking whether, as attorneys for Mr. Sarjeant, the Chief Executive Officer of Chiki Solutions Corp., they would accept service on behalf of Chiki Solutions Corp. Counsel did not respond to those emails.

I certify that, on November 22, 2023, the foregoing Motion for Order of Disposition and Protective Objection and this Certificate of Service—as well as the Motion for Writ or Garnishment, ECF No. 57; Proposed Writ, ECF No. 57-1; and Signed Writ of Garnishment, ECF No. 58, were also sent by certified mail and return receipt requested to another individual formerly associated with Driver Loan:

Victoria Betancourt
6428 NW 104 Path

Doral, FL 33178

The above-referenced documents were also attempted to be sent by email to addresses formerly associated with Ms. Sarjeant, Ms. Betancourt, and Ms. Davila: development@driverloan.net, victoria@driverloan.net, and mari@driverloanusa.com.

Attached to this Certificate of Service is a printout from the Florida Secretary of State website showing that Chiki Solutions Corp. was administratively dissolved on September 22, 2023, and that the 8350 NW 52 Terrace address, identified above, is the last known mailing addresses for the entity, its registered agent, and its president and vice president.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 22, 2023

Jacob A. Schunk
Enforcement Attorney

DIVISION OF CORPORATIONS

Department of State / Division of Corporations / Search Records / Search by Entity Name /

# Detail by Entity Name

Florida Profit Corporation
CHIKI SOLUTIONS CORP

**Filing Information**

| | |
|---|---|
| **Document Number** | P19000018383 |
| **FEI/EIN Number** | 83-4154720 |
| **Date Filed** | 03/05/2019 |
| **State** | FL |
| **Status** | INACTIVE |
| **Last Event** | ADMIN DISSOLUTION FOR ANNUAL REPORT |
| **Event Date Filed** | 09/22/2023 |
| **Event Effective Date** | NONE |

**Principal Address**

8350 NW 52 Ter
301
DORAL, FL 33166

Changed: 04/29/2022

**Mailing Address**

8350 NW 52 Ter
301
DORAL, FL 33166

Changed: 05/14/2020

**Registered Agent Name & Address**

DAVILA, EVELIN
8350 NW 52TR
301
DORAL, FL 33166

Name Changed: 07/28/2021

Address Changed: 07/29/2020

**Officer/Director Detail**

**Name & Address**

Title P

DAVILA , EVELIN
8350 NW 52 Ter
301
DORAL, FL 33166

Title VP

SARJEANT, MARIA CLAUDIA
8350 NW 52 Ter
301
DORAL, FL 33166

**Annual Reports**

| Report Year | Filed Date |
|---|---|
| 2021 | 04/23/2021 |
| 2021 | 07/21/2021 |
| 2022 | 04/29/2022 |

**Document Images**

| | |
|---|---|
| 04/29/2022 -- ANNUAL REPORT | View image in PDF format |
| 07/28/2021 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 07/21/2021 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/23/2021 -- ANNUAL REPORT | View image in PDF format |
| 08/05/2020 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 07/29/2020 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 05/14/2020 -- ANNUAL REPORT | View image in PDF format |
| 03/05/2019 -- Domestic Profit | View image in PDF format |

Florida Department of State, Division of Corporations

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-24550-CIV-SANCHEZ**
**(CONSENT CASE)**

BUREAU OF CONSUMER FINANCIAL PROTECTION.

*Plaintiff,*

vs.

DRIVER LOAN, LLC, and ANGELO SARJEANT,

*Defendants,*

And

SELECT BANKCARD, INC.,

*Garnishee.*

---

**DECLARATION IN RESPONSE TO WRIT OF GARNISHMENT**

I, Jonathan Spencer Shipley declare as follows:

1. I am the president and CEO of Select Bankcard, Inc.

2. Select Bankcard, Inc. does not have custody, control, or possession of property or assets of the Defendants as identified. However, there may be related funds.

Select Bankcard is an independent sales organization contracted with Mission Valley Bank as the acquiring bank. Mission Valley Bank and Select Bankcard previously entered into a contract with "Chiki Solutions Corp." to provide merchant services. Chicki Solutions Corp. does business as "Driverloan USA" and its sole owner is "Maria Claudia Sarjeant." Select Bankcard closed the merchant account associated with Driverloan USA on 9 October 2020. As part of the agreement between Mission Valley Bank, Select Bankcard, and Driverloan USA, amounts were

held in reserve against potential risk created by Driverloan USA. The reserve account is held in the name of Mission Valley Bank. (The amounts held in reserve, including the accumulation and release amounts and dates, were provided in the subpoena production.) Upon closure of the merchant account, funds were released from the reserve account to Driverloan USA as perceived risk decreased over time. (A copy of the correspondence explaining the anticipated release schedule was provided in the subpoena production.) Upon receiving the initial subpoena from the Consumer Financial Protection Bureau in March of 2022, we stopped releasing any funds held in that reserve account.

In October of this year, Angelo Sarjeant reached out to Select Bankcard to request that the remaining Driverloan USA reserve funds be released. After discussing the issue with Mr. Sarjeant, it was explained that the funds are held until such time as the risk is resolved, and that before the funds to Driverloan could be released Select Bankcard would need to confirm that there was no continuing risk to Select Bankcard from the Consumer Financial Protection Bureau. Mr. Sarjeant was told that Select Bankcard would contact the Consumer Financial Protection Bureau regarding this matter, he expressed understanding and said he would continue to follow up on the status of the reserve funds. After discussing the matter with Mr. Sarjeant, Select Bankcard reached out to the Consumer Financial Protection Bureau. Shortly thereafter Edward Buchanan, who represented himself as counsel for Mr. Sarjeant and Driver Loan contacted Select Bankcard and threatened legal action and accused Select Bankcard of breaching ethical and legal rules by contacting the Consumer Financial Protection Bureau.

As represented in our subpoena production, for amounts we hold in reserve, a merchant has a contingent interest in any surplus that remains after satisfying any risk. Thus, these funds could be garnished at such time as it is determined that there remains no risk and the funds

become available to be distributed. As long as risk remains for collection action from the Consumer Financial Protection Bureau or the potential for legal action from Mr. Sarjeant or Driver Loan, the funds are not available to be released.

As shown in our subpoena responses, we do not hold and have not held any funds for the Defendants as identified. The amounts currently held in reserve by Mission Valley Bank are for "Chiki Solutions Corp." Chicki Solutions Corp does business as "Driverloan USA" and its sole owner is "Maria Claudia Sarjeant." While these appear very closely related to the defendants mentioned in the writ, they are not identical. Accordingly, without further guidance or direction form the court we cannot garnish the reserve account even if all other risk conditions are satisfied.

3. Before deducting the associated legal fees and costs associated with the risk, there is currently $201,359.01 held in reserve for Driverloan USA. As explained *supra*, Defendants, as identified, have no interest therein and Driverloan USA's interest therein is a contingent interest in any surplus that remains after satisfying any risk or contractual fee deductions.

4. Other than the legal fees and other contractual fees which have not been deducted from the reserve amounts and the threatened legal actions, Select Bankcard is unaware of any other garnishments, suggestions, or levies to which the property or assets are subject and is not aware of any exemptions from garnishment, suggestion, or levy.

5. Select Bankcard does not anticipate that any amounts will accrue to Defendants in the future nor does it anticipate that any amount will accrue to Driverloan USA on the reserve funds.

*I declare under penalty of perjury that the foregoing is true and correct.*

DATED: 7 NOVEMBER 2023

By ______________________
Jonathan Spencer Shipley
President and CEO

# Exhibit B

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

BUREAU OF CONSUMER FINANCIAL )
PROTECTION, )
Plaintiff, )
vs. ) No. 1-20-cv-24550-DLG
DRIVER LOAN and ANGELO JOSE )
SARJEANT, )
Defendants. )

\- - - - -

VIRTUAL DEPOSITION OF ANGELO JOSE SARJEANT

The deposition of Angelo Jose Sarjeant was convened on Friday, May 6, 2022, commencing virtually at 10:20 a.m., before Karen K. Brynteson, Registered Merit Reporter, Certified Realtime Reporter, and Notary Public.

\- - - - -

offered them as merchant cash advances; is that right?
A. Yes.
Q. Okay. Do you recall submitting financial disclosures to the Bureau when we were discussing settlement of this matter?
A. Yes.
Q. Okay. Why did you include in your financial disclosures a company called Chiki Solutions?
A. Driver Loan and Driver Loan Investors Club is Chiki Solutions.
Q. Okay. Explain that to me.
A. Driver Loan is a d/b/a of Chiki Solutions.
Q. I see. Does Chiki Solutions have any other businesses under its corporate umbrella?
A. Not that I know of.
Q. Okay. Who's the -- could you explain the -- the ownership of Chiki Solutions?
A. It is owned by my sister, Maria Sarjeant.
Q. Okay.
A. And it was run by me.
Q. I see. And so what would your title

have been?
A. CEO, as mentioned previously.
Q. Okay. So you have the same title for Chiki Solutions as you do for Driver Loan?
A. Chiki Solutions is Driver Loan. I was CEO of Driver Loan.
Q. I see. Switching topics a little, do you purchase horses?
A. Do I purchase horses?
Q. Yes.
A. Can you expand the question?
Q. Have you in the last several years bought horses?
A. Yes.
Q. Okay. What type of horses have you bought?
A. I have had paso fino horses, and I've had quarter horses.
Q. How many horses have you bought?
A. I don't remember.
Q. More than ten, do you think?
A. I don't think so.
Q. And how much on average do these horses cost?
A. Can you repeat the question?

# Exhibit C

CONSUMER FINANCIAL PROTECTION BUREAU

-------------------------)

In the Matter of: ) Case Number

DRIVER LOANS, LLC ) 2020-2080-02

-------------------------)

Remote Examination

Miami, Florida

Friday,
August 14, 2020

The investigational hearing testimony of ANGELO SARJEANT commenced, pursuant to notice, at 1:45 p.m.

Reported By:

Raymond G. Brynteson, RMR-CRR-RDR

talking about that, did you, I mean, where was the money? Did you have a bank account where this money was kept that was invested in the company?

A. Yeah, absolutely. We had our business account.

Q. And what bank was that at?

A. At that time we used TD Bank.

Q. TD?

A. Yeah, TD Bank.

Q. Okay. In Miami?

A. Yes.

Q. Okay. And has that changed over time, the bank that you use?

A. Yeah. We currently use BB&T.

Q. And at BB&T, the account is under what name?

A. I think it's Chiki Solutions with the d/b/a as DriverLoan USA.

Q. What was the solution name?

A. Chiki Solutions, LLC.

Q. How do you spell that?

A. C-h-i-k-i.

Q. C-h-i-k-i?

A. Yeah, Chiki Solutions.

# Exhibit D

[redacted]

**From:** Angelo Sarjeant <angelosarjeant@gmail.com>
**Sent:** Wednesday, November 24, 2021 10:58:31 AM
**To:** Konop, Benjamin (CFPB) <Benjamin.Konop@cfpb.gov>
**Subject:** Funds Held in Reserve Against the Risk Associated with Driverloan USA's Merchant Account and Processing

**CAUTION:** This email originated from a non-government domain. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact Cybersecurity Incident Response Team (CSIRT) at 202-435-7200 or report a suspicious email.

Hi Ben,

Here is the letter sent to us by our merchant. If the CFPB is able to do anything to release this funds, we would immediately pay the fine and investors with that money.

Let me know if it is possible.

Thank you
Angelo

SELECT BANKCARD

P: 855.943.5763

F: 801.331.8275

April 2, 2021

CHIKI SOLUTIONS CORP
Doing Business As: Driverloan USA
9770 NW 74 Ter.
Doral, FL 33178

**VIA US AND ELECTRONIC MAIL**

**WITH A COPY TO:**

CHIKI SOLUTIONS CORP
Doing Business As: Driverloan USA
8350 NW 116 Ave.
Doral, FL 33166

Victoria Betancorp
victoria@driverloan.net

Maria Claudia Sarjeant
9770 NW 74 Ter.
Doral, FL 33178
mari@driverloanusa.com

**RE: FUNDS HELD IN RESERVE AGAINST THE RISK ASSOCIATED WITH DRIVERLOAN USA'S MERCHANT ACCOUNT AND PROCESSING.**

To Whom It May Concern:

As a merchant, Chiki Solutions Corp, dba Driverloan USA ("Driverloan") has exposed Select Bankcard, Inc. ("Select Bankcard") and its acquiring bank to financial risk. Risk is inherent in the provision of merchant services. To protect against this risk, Driverloan authorized the creation of a reserve account "sufficient to satisfy [Driverloan]'s current or future obligations as determined by [Select Bankcard] related to the Transactions processed under [the Merchant] Agreement, or otherwise incurred or anticipated to be incurred by [Select Bankcard] on [Driverloan]'s behalf under [the Merchant] Agreement." Merchant Agreement § 5.3. Select Bankcard reviews the transactions processed and the potential chargeback timelines and other risk factors to determine both the amount of funds to hold in the reserve account and the timeframe for holding and releasing reserve account funds. Unfortunately, the risk associated with providing merchant services to Driverloan was exacerbated by Driverloan's decision to process transactions that were not approved. This increased risk has impacted the release of funds held in the reserve account.

SELECT BANKCARD

P: 855.943.5763

F: 801.331.8275

Select Bankcard understands and is sympathetic to merchants' interests in having funds released from reserve accounts. However, the actions creating the risk are almost exclusively within the merchant's unilateral control. Moreover, it is generally in the best interests of all parties to retain the funds in the reserve accounts until the risk events have abated. It can be problematic, not only for Select Bankcard but also for the merchant, the acquiring bank, and the cardholder, when liabilities arise that exceed the funds remaining in the reserve account. Select Bankcard is familiar with the timeframes for risk events[1] and retains the right to determine releases from the reserve account based on its assessments of the risks involved. *See Id.* at §§ 4.2 and 5.3. As risk falls off over time, funds are released until the entire remaining balance is credited back to the merchant. "Any balance remaining after Chargeback rights have expired and all other expenses, losses, fees, assessments, and damages have been paid" are distributed to the merchant. *Id.* at § 4.2.

Currently, there is $396,359.01 held in the reserve account associated with Driverloan's processing. This represents only a small portion of the outstanding risk associated with Driverloan's merchant account and processing history. The risk remains outstanding, and thus Select Bankcard will continue to hold funds to protect against that risk. However, Select Bankcard anticipates that in the event there are no further dispute items Select Bankcard may begin releasing funds from the reserve account as early as May 5, 2021. It is anticipated that beginning May 5, 2021, Select Bankcard will release $17,500 to Driverloan each month until April 11, 2022, when all remaining reserve funds will be released. This is a tentative schedule and Select Bankcard reserves the right to alter it according to its assessment of the risk associated with the account. Select Bankcard hopes Driveloan understands the need to retain reserve account funds to protect against the risk created by Driverloan and finds Select Bankcard's anticipated distribution schedule acceptable.

Please direct all future inquiries and communications with Select Bankcard to me directly. I will be happy to address any questions or concerns you have regarding Driverloan's merchant account, the reserve account, releases, or otherwise.

Respectfully,

Jared M. Asbury

Jared M. Asbury

Inside Legal Counsel
jasbury@selectbankcard.com
855.943.5763 ext. 246

---

[1] Timeframes for chargebacks can run 540 days, and other risk can continue even longer. *See e.g.* Visa Core Rules and Merchant Agreement at § 5.3.