UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-24550-CIV-SANCHEZ

BUREAU OF CONSUMER FINANCIAL PROTECTION,

Plaintiff,

v.

DRIVER LOAN, LLC, and ANGELO JOSE SARJEANT,

Defendants.
_______________________________________/

**ORDER ON MOTION FOR ORDER OF DISPOSITION**

This matter is before the Court on Plaintiff Bureau of Consumer Financial Protection's ("Plaintiff" or "Bureau") Motion for Order of Disposition, ECF No. 62. After reviewing Plaintiff's motion, Defendants' response (ECF No. 64), and Plaintiff's reply and supplement (ECF Nos. 67-68), the Court held a status conference on the motion. *See* ECF No. 72. In response to the Court's Order Following Status Conference, *see* ECF No. 73, both parties submitted additional briefing. ECF No. 74 (Plaintiff's post-conference statement) & ECF No. 75 (Defendants' post-conference statement). Plaintiff also responded to Defendant's post-conference statement, ECF No. 76. Having considered the parties' argument at the May 6 status conference, the pre- and post-conference briefing, the pertinent portions of the record, and the applicable law, and otherwise being fully advised in the premises, for the reasons discussed below, Plaintiff's Motion for Order of Disposition, ECF No. 62, is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

In this case, the Bureau brought a civil enforcement action against Defendants Driver Loan, LLC ("Driver Loan") and Angelo Jose Sarjeant ("Sarjeant") alleging that they engaged in deceptive acts and practices in violation of Section 1036(a)(1)(B) of the Consumer Financial

Protection Act of 2020, 12 U.S.C. § 5536(a)(1)(B). ECF No. 1. The parties subsequently agreed to the entry of a stipulated judgment to resolve the dispute, and on June 1, 2021, the Court entered a Stipulated Final Judgment and Order ("Stipulated Judgment") against Defendants jointly and severally. ECF No. 13. Among other things, the Stipulated Judgment imposed a civil money penalty of $100,000, *id.* at ¶ 30; ordered that a "judgment for monetary relief and damages [wa]s entered in favor of the Bureau and against Defendants, jointly and severally, for the full amount Defendants received from consumers who purchased their advertised Consumer Financial Products and Services," plus interest, for purpose of providing redress to the affected consumers, *id.* at ¶ 11; and required Defendants to identify and pay redress to the affected consumers/victims, *id.* at ¶¶ 11-29.

In October 2023, the Court issued a Writ of Garnishment addressed to Select BankCard, Inc. ("Select" or "Garnishee"), a merchant payment processor, for "the assets or property in your custody, control or possession in which the Defendants have an ownership interest." ECF No. 58 at 1. Select's president and CEO, Jonathan Shipley, filed a declaration in response to the Writ, stating that Select holds $201,359.01 in reserve in an account for "Chiki Solutions Corp," who "does business as 'Driverloan USA'" and whose "sole owner is 'Maria Claudia Sarjeant.'" ECF No. 66 at ¶¶ 2-3. Mr. Shipley also stated that in October 2023, Defendant Sarjeant contacted Select seeking the release of the remaining Driverloan USA funds held by Select. *Id.* at ¶ 2. When Select explained to Defendant Sergeant that Select would not be releasing the funds under the existing circumstances, attorney Edward Buchanan contacted Select, represented himself to be the attorney for Defendants Sarjeant and Driver Loan, and threatened legal action against Select. *Id.*

The instant Motion for Order of Disposition, ECF No. 62, followed.

## II. ANALYSIS

The Bureau requests that the entirety of the funds in Select's possession, totaling $201,359.01, be paid to the Bureau. ECF No. 62 at 1. In its motion, the Bureau advances two reasons for why it is entitled to this money. First, the Bureau argues that it is entitled to the full amount "for the purpose of redressing customers, to be applied in partial satisfaction of that part of the judgment requiring redress." ECF No. 62 at 3-4 (citing Stipulated Final Judgment and Order, ECF No. 13 at ¶¶ 11-13). In the alternative, the Bureau argues that it is "entitled to $100,000 of the proceeds to satisfy the unpaid $100,00 money judgment in favor of the Bureau and the other $101,359.01 as a sanction for Defendants' contempt." ECF No. 62 at 4.

However, in its post-conference statement, the Bureau raised a third avenue for recovering the funds in the garnishee's possession. "The Bureau requests that the Court convert paragraph 11 of the Stipulated Final Judgment and Order . . . into an explicit money judgment for a sum certain to allow, beyond any dispute, enforcement of the payment provisions in Section IV through the Federal Debt Collection Procedures Act (FDCPA)." ECF No. 74 at 1. The Bureau requests a judgment in the amount of $2,863,647.90, which, it argues, "is the amount of redress owed to consumers as calculated by Defendants." ECF No. 25-2 (Konop Declaration) at ¶ 2; *see* ECF No. 74 at 2 & n.2.

In response, Defendants assert that the motion for disbursement should be denied because all the funds subject to garnishment are held by Select on behalf of Chiki Solutions Corp. ("Chiki"), a non-party who Defendants argue is a wholly separate entity from Driver Loan, and as such, is not subject to the Writ of Garnishment. ECF No. 75 at ¶¶ 1-4, 6.

Accordingly, the Court must determine if the Bureau is entitled to the $201,359.01 in garnished funds held by Select.

**A. The Garnished Funds Held by Select May Properly Be Paid <u>to the Bureau Because Chiki Is Driver Loan's Nominee.</u>**

The Bureau argues that it is entitled to the amount held by Select on behalf of Chiki because Chiki is simply a nominee of Driver Loan. *E.g.*, ECF No. 62 at 5; ECF No. 74 at 3-5. Defendants argue that Driver Loan "is a completely different entity from Chiki," that statements of Defendant Sarjeant cannot be used to bind Chiki, and, as a result, the Bureau is not entitled to the funds held by the Garnishee. ECF No. 75 at ¶¶ 3, 6, 9-12.

"A nominee is one who holds bare legal title to property for the benefit of another." *May v. United States*, No. 07-10531, 2007 WL 3287513, at *1 (11th Cir. Nov. 8, 2007) (quoting *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001)). "[A] person or entity cannot have a vested interest in property if that person or entity is found to be acting as a nominee for someone" whose property is the subject of litigation. *United States v. Weiss*, 467 F.3d 1300, 1308-09 (11th Cir. 2006) (forfeiture proceedings). "Who really benefits from and controls the property is at the heart of a nominee case." *United States v. Dornbrock*, No. 06-61669-CIV, 2008 WL 769065, at *4 (S.D. Fla. Jan. 17, 2008); *see id.* ("The 'nominee theory involves the determination of the true beneficial or equitable ownership of the property' at issue.") (quoting *Oxford Cap. Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000)).

Although state law generally governs a nominee analysis, *see id.* at *5, federal courts apply federal law because Florida law "provides no bright-line test for determining nominee status." *United States v. Hounsom*, No. 6:14-CV-93-ORL-40DAB, 2015 WL 6152964, at *4 (M.D. Fla. Aug. 11, 2015) (citing *Dornbrock*, 2008 WL 769065, at *5; *United States v. Ippolito*, 838 F. Supp. 2d 1287, 1291 (M.D. Fla. 2012)). Even if Florida law applied, "the standards are so similar that the distinction is of little moment," because nominee analysis "under either state or federal law depends upon who has 'active' or 'substantial' control." *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728 (11th Cir. 1989).

The Eleventh Circuit in *Shades Ridge* identified three non-exhaustive "factors as determinative in nominee cases: (i) control over the nominee and the nominee's assets, (ii) family relationships, and (iii) use of nominee's assets." *In re Trujillo*, 626 B.R. 59, 74 (Bankr. S.D. Fla. 2019) (citing *Shades Ridge*, 888 F.2d at 728). Courts have also considered additional factors, such as whether property was placed "in the name of the nominee in anticipation of collection activity." *Dornbrock*, 2008 WL 769065, at *5 (listing factors considered when determining whether property is being held by a nominee).

Here, the record shows that Driver Loan and Defendant Sarjeant exerted dominion and control over Chiki's accounts. First, Driver Loan kept its money in a bank account under Chiki's name. *See* ECF No. 62 at 23 (Ex. C) (Defendant Sarjeant testimony of Aug. 14, 2020) ("Q: Okay. And has that changed over time, the bank that you use? A: Yeah. We currently use BB&T. Q: And at BB&T, the account is under what name? A: I think it's Chiki Solutions with the d/b/a as DriverLoan USA."). Defendant Sarjeant also testified that, although Chiki was owned by his sister (Maria Sarjeant), "Driver Loan and Driver Loan Investors Club is Chiki Solutions," "Driver Loan is a d/b/a of Chiki Solutions," "Chiki Solutions is Driver Loan," and Chiki Solutions "was run by me," that is, by Defendant Sarjeant, as the "CEO." ECF No. 62 at 19-20 (Ex. B) (Defendant Sarjeant testimony of May 6, 2022). Moreover, in a 2022 filing with this Court, Sarjeant explained that he "ha[d] a large amount of fund[s] withheld by the merchant processor, funds that belong to investors and [he was] waiting for the merchant to release the funds so they can be returned to investors." ECF No. 24-1 at 2. In earlier correspondence with the Bureau, Sarjeant also explained that funds were being held by the Defendants' merchant processor, and he attached an April 2, 2021 letter from Select addressed to Chiki, doing business as Driverloan USA (with copies to two individuals, including Maria Sarjeant, at driverloanusa.com email domains). ECF No. 62 at 25-27 (Ex. D). In that letter, Select explained that funds in the Driverloan USA merchant account were being held in reserve but that Select

would begin releasing those funds to Driverloan USA once outstanding disputes were resolved. *Id.* at 26-27. Defendant Sarjeant further demonstrated his prior dominion over that now-garnished account when, in October 2023, he asked Select to release the funds and then had his lawyer intervene on the Defendants' behalf when Select would not release the funds. *See* ECF No. 66 at 2 ¶ 2 (Shipley Declaration). Last, the record establishes that there is a close family relationship between Chiki and the Defendants, namely that Chiki is owned by Sarjeant's sister, Maria Claudia Sarjeant. *See id.* at 3 ¶ 2; ECF No. 62 at 19.

Defendants argue—without citation to any legal authority—that Defendant Sarjeant's deposition testimony cannot bind Chiki because he was not authorized to speak for Chiki, because Chiki was not present for the depositions, and because the Bureau "never sought to corroborate the Chiki testimony be [sic] questioning the owners or directors of Chiki." *See* ECF No. 75 at ¶ 12. Defendants further argue that "[Driver Loan and Chiki] have different telephone numbers, tax identification numbers, employees and assets; maintain separate bank accounts, and are not liable for debts of other companies or entities." ECF No. 75 at ¶ 9. Even if the Court were to credit these arguments from Defendants, neither Driver Loan nor Defendant Sarjeant has the authority to make those arguments on behalf of Chiki. *See, e.g.*, *State Farm Mut. Ins. Co. v. Gomez*, 22-MC-81945-AMC, 2024 WL 21570, at *2 (S.D. Fla. Jan. 2, 2024) (because third party did not file an affidavit or otherwise intervene to assert its interest in the account, third party's potential ownership of the account is not a basis to dissolve writ of garnishment); *Alterra Healthcare Corp v. Estate of Shelley*, 827 So.2d 936, 941 (Fla. 2002) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").

Contrary to Defendants' arguments that Chiki "was not served with any notice of these proceedings," ECF No. 64 at ¶ 8; ECF No. 75 at ¶ 7, the Court finds that Chiki has had actual

notice of these proceedings. The Bureau has made numerous attempts to serve Chiki pursuant to Florida law regarding service on an inactive entity and an entity concealing its whereabouts. ECF No. 76 at 2; *see, e.g.*, ECF No. 62 at 8-10; ECF No. 68 (Supplement to Certificates of Service) at 1; Fla. Stat. §§ 48.101(1) & (3), 48.062(4) & (4)(b). Moreover, the Bureau contacted attorney Buchanan, counsel for Defendants, to inquire as to a registered agent for Chiki and to request that he accept service on Chiki's behalf as the attorney of record representing Chiki in a Florida state case, but those efforts were to no avail. *See generally* ECF No. 68 (Plaintiff's Supplement to Certificates of Service). Furthermore, attorney Buchanan serves as counsel for Defendants and as counsel for Chiki, and the Court finds that Chiki had actual notice of these proceedings—at a minimum—through attorney Buchanan.[1] Indeed, attorney Buchanan initiated state court litigation against Select on Chiki's behalf concerning Select's actions concerning the garnished account. ECF No. 67-3. Chiki's state court complaint demonstrates that Chiki was aware of a "lawsuit involving another company Driver Loan LLC" and that those proceedings were the reason Select was not releasing funds. *Id.* at ¶¶ 8-9. That complaint also discussed and attached the April 2, 2021 letter from Select that Defendant Sarjeant had previously forwarded to the Bureau. *Id.* at ¶ 6 & Ex. A.

Despite having actual notice of these proceedings concerning the garnished account, neither Chiki nor Maria Sarjeant has come forward to object to the relief sought by the Bureau in these proceedings, to assert any interest in the garnished funds held by Select, or to dispute that Chiki is in fact the Defendants' nominee owner of the garnished account.

Here, even though the garnished Select account is nominally held in Chiki's name, the Court finds that the Bureau has established that the Defendants had "active and substantial control" of the garnished account, that the funds in the account are actually the property of the Defendants, and that Chiki is just the nominee owner of the Defendants' funds held in that

[1] The Court does note, however, that Mr. Buchanan does not represent Chiki in this federal case and that Chiki has steadfastly chosen not to make any appearance in this case.

account. *See, e.g.*, *Shades Ridge*, 888 F.2d at 728. Accordingly, the Motion for Order of Disposition is **GRANTED.**

**B. <u>The Garnishee Is to Pay the Funds in the Garnished Account to the Bureau.</u>**

Having determined that Chiki is Driver Loan's nominee, the Court finds that the funds in the garnished account are to be paid to the Bureau. As an initial matter, the Stipulated Judgment in this case includes a civil penalty judgment in the specific amount of $100,000. *See* ECF No. 13 at ¶ 30. In addition, the Stipulated Judgment provides as follows:

> A judgment for monetary relief and damages is entered in favor of the Bureau and against Defendants, jointly and severally, for the full amount Defendants received from consumers who purchased their advertised Consumer Financial Products and Services, plus all interest due to consumers under the terms of the Consumer Financial Products and Services. for the purpose of providing redress to Affected Consumers.

ECF No. 13 at ¶ 11. While the Stipulated Judgment did not provide a liquidated amount for this remedial part of the judgment, it established a detailed procedure for determining that amount. *Id.* at ¶¶ 12-29. The parties, moreover, have long been in agreement that the amount of the judgment owed by Defendants to the Bureau under Paragraph 11 of the Stipulated Judgment is $2,863,647.90. *See, e.g.*, ECF No. 37 at 2, 8 & Ex. A; ECF No. 25 at 2; ECF No. 25-1 at ¶ 2. Indeed, the Defendants have long argued that the Stipulated Judgment already constitutes a money judgment upon which the Bureau "is free to collect under the procedures" of the Federal Debt Collection Procedures Act. ECF No. 37 at 14.

The Bureau nonetheless requests that the Court "convert paragraph 11 of the Stipulated Final Judgment and Order . . . into an explicit money judgment for a sum certain to allow, beyond any dispute, enforcement of the payment provisions in Section IV through the Federal Debt Collection Procedures Act (FDCPA)." ECF No. 74 at 1. The Bureau relies on *Federal Trade Commission v. Leshin*, 719 F.3d 1227, 1235 (11th Cir. 2013), in which the Eleventh Circuit held that a district court did not abuse its discretion when it converted the unpaid remainder of an equitable disgorgement remedy into a money judgment. In *Leshin*, the district court's original

disgorgement order said that, "[a]fter disgorgement and any attendant contempt enforcement are complete, the FTC may apply to the Court to convert any unpaid balance of this civil contempt remedy to a money judgment." *Id.* at 1229. Here, the Stipulated Judgment similarly contemplates modifications and that the precise sum of the judgment contemplated in Paragraph 11 would be calculated in the future. *See, e.g.*, ECF No. 13 at ¶ 11 ("A judgment for monetary relief and damages is entered in favor of the Bureau and against Defendants . . . for the purpose of providing redress to Affected Customers"); *id.* at ¶¶ 12-29 (providing procedures for calculating the amount of money damages to provide redress to victims); *id.* at ¶ 61 ("The Court will retain jurisdiction of this matter for purposes of construction, **modification**, and enforcement of this Order.") (emphasis added). Significantly, the Court could have issued a money judgment in a specific, liquidated amount in the first instance. *See Leshin*, 713 F.3d at 1232 ("If the district court had the power to grant either or both the equitable and the legal remedy in the first place, then there is no reason we can discern why it would be barred from converting its disgorgement order into a money judgment in order to satisfy 'the requirements of full remedial relief.'") (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949)). Notably, the Defendants have not opposed modification of Paragraph 11 of the Stipulated Judgment to reflect that it is a money judgment in the amount of $2,863,647.90, an amount that the Defendants acknowledge they owe under that paragraph.

Under these circumstances, the Court agrees that modification of Paragraph 11 of the Stipulated Judgment is appropriate to reflect the now-calculated amount of the money judgment, and the request to modify Paragraph 11 of the Stipulated Judgment to reflect a judgment amount of $2,863,647.90 is **GRANTED**. However, because the Bureau made this modification request in a Court-ordered memorandum rather than in a motion, and because the Bureau did not confer with the Defendants pursuant to Local Rule 7.1(a)(3) concerning the scope of the language that the Bureau proposes to modify Paragraph 11, the Bureau's request to modify Paragraph 11

beyond a modification to reflect a specific judgment amount of $2,863,647.90 is **DENIED WITHOUT PREJUDICE**. If the Bureau seeks further modification of Paragraph 11 of the Stipulated Judgment, it shall file a motion seeking such relief after conferring with the Defendants in accordance with Local Rule 7.1(a)(3).

## III. CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** as follows:

(1) Plaintiff's Motion for Order of Disposition, ECF No. 62, is **GRANTED IN PART** and **DENIED IN PART;**

(2) Garnishee Select BankCard Inc. shall, within ten (10) days of this Order, that is, **on or before October 10, 2024**, pay the Bureau of Consumer Financial Protection the entire amount of the garnished funds, that is, $201,359.01 (ECF No. 66);

(3) Paragraph 11 of the Stipulated Final Judgment and Order (ECF No. 13) is modified to reflect that the amount of the "judgment for monetary relief and damages . . . entered in favor of the Bureau and against Defendants, jointly and severally," is $2,863,647.90; and

(4) Any further request to modify the language of Paragraph 11 of the Stipulated Final Judgment and Order based on the above-ordered modification specifying the amount of the judgment shall be filed within twenty (20) days of this Order, after conferral as required by Local Rule 7.1(a)(3).

**DONE AND ORDERED** in Chambers in Miami, Florida, this 30th day of September 2024.

EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of Record